IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Whelthy McKune, | ) | C/A No. 8:17-cv-00189-RMG-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Dennis Bush, *Warden, Broad River* | ) | |
| *Correctional Institution*, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 13.] Petitioner is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner, proceeding with the assistance of counsel, filed this Petition for writ of habeas corpus on January 20, 2017. [Doc. 1.] On April 17, 2017, Respondent filed a motion for summary judgment and a return and memorandum to the Petition. [Docs. 12; 13.] Petitioner filed a response in opposition on May 31, 2017 [Doc. 17], and Respondent filed a reply on June 7, 2017 [Doc. 19].

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted.

## BACKGROUND

Petitioner is confined in the South Carolina Department of Corrections at Broad River Correctional Institution pursuant to orders of commitment of the Lexington County

Clerk of Court. [Doc. 1 at 1.] In January 2004, Petitioner was indicted for burglary first degree and criminal conspiracy. [App. 49–52.[1]] On January 12, 2004, represented by Cameron B. Littlejohn, Petitioner pled guilty to both charges. [App. 1–9.] On February 9, 2004, Petitioner was sentenced to life imprisonment for the burglary first degree charge and five years imprisonment for the criminal conspiracy charge, the sentences to run concurrently. [App. 19.] Petitioner was granted a reconsideration hearing, which occurred on October 17, 2006. [App. 22–45.] On December 10, 2007, Petitioner's motion for reconsideration was denied. [App. 46–48.]

**Direct Appeal**

Petitioner appealed. However, on December 17, 2008, the South Carolina Court of Appeals granted Petitioner's motion to withdraw his appeal. [App. 57.] Remittitur was issued on January 5, 2009. [App. 58.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on April 21, 2009. [App. 59–65.] Petitioner alleged he was being held in custody unlawfully based on the following grounds:

(a)     Involuntary Guilty Plea

(b)     Ineffective Assistance of Counsel

[App. 61.] In support of these grounds, Petitioner alleged the following facts:

(a)     Failure of trial counsel to prepare and investigate.

(b)     Applicant did not have a full understanding of the charges against him.

---

[1]The Appendix can be found at Docket Entry Number 12-8.

(c)     Failure of counsel to present mitigating evidence.

(d)     Failure to counsel to make contemporaneous objections regarding plea agreement and move to withdraw guilty plea.

(e)     Failure of trial counsel to properly prepare and present Motion for Reconsideration.

[App. 61.] The State filed a return, dated May 11, 2010. [App. 66–70.] On November 16, 2010, represented by Tricia A. Blanchette ("Blanchette"), Petitioner amended his PCR application to add the following claims:

1.     Ineffective assistance of counsel for failure to prepare and investigate, specifically, but not limited to the following claims:

    a.     Failure to provide and review the complete discovery materials with the Applicant prior to the entry of his plea.

    b.     Failure to review the indictments with the Applicant and discuss the charges set forth therein.

    c.     Failure to conduct an independent investigation.

    d.     Failure to ensure that the Applicant was fully advised regarding the original plea offer to 15 years and to ensure that the rejection of such offer was knowingly and understandably made by the Applicant.

2.     Ineffective assistance of counsel regarding the entry of the plea and separate sentencing hearing.

    a.     Failure to properly advise the Applicant regarding the State's position on sentencing and/or move to withdraw when the State's position differed from what was conveyed by counsel to the Applicant.

3

        b.        Failure to object and/or move to withdraw when the State provided the plea court with a variance in the facts from the plea to the sentencing hearing.

        c.        Failure to refute the State's position that the Applicant entered the home during the robbery at issue.

        d.        Failure to present viable mitigation on the Applicant's behalf.

   3.        Ineffective assistance of counsel regarding the reconsideration hearing.

        a.        Failure to have the motion heard in a timely manner despite repeated requests from the Applicant.

        b.        Failure to present an argument regarding the State's change in position as to sentencing or the variance in the facts from the plea to sentencing hearing.

        c.        Failure to present any viable evidence to refute the State's position that the Applicant entered the home during the robbery.

        d.        Failure to address the knowing and voluntary nature of the Applicant's plea.

        e.        Failure to offer viable mitigation on the Applicant's behalf.

[App. 72–73.]

A hearing was held on November 29, 2010, and Petitioner was represented at the hearing by Blanchette. [App. 75–179.] On November 4, 2011, the PCR court filed an order denying and dismissing the PCR application with prejudice. [App. 270–95.] Petitioner filed a motion for rehearing pursuant to Rule 59(a), SCRCP, and/or to alter or amend pursuant to Rule 59(e), SCRCP. [App. 297–302.] The State filed a return to the motion [App.

4

304–11], and on June 15, 2012, the PCR court filed an order denying the motion for rehearing and to alter or amend [App. 312–13].

Petitioner appealed. [Supp. App. 1.[2]] On October 26, 2012, Blanchette filed on Petitioner's behalf a petition for writ of certiorari in the Supreme Court of South Carolina. [Supp. App. 3–28.] The petition asserted the following as the sole issue presented:

> Whether The Lower Court Erred in Finding that Plea Counsel's Performance Was Not Ineffective and Prejudicial to the Petitioner Thus Rendering His Plea Involuntary Since There Was No Evidence of Probative Value to Support Such a Finding.

[Supp. App. 5.] The State filed a return. [Supp. App. 29–45.] On June 24, 2014, the South Carolina Court of Appeals denied certiorari. [Supp. App. 46.] Petitioner filed a petition for rehearing on July 7, 2014. [Supp. App. 47–55.] The State filed a return. [Supp. App. 56–60.] On September 18, 2014, the Court of Appeals granted the petition for rehearing and ordered briefing. [Supp. App. 61.]

Blanchette filed a brief on Petitioner's behalf, dated October 8, 2014 [Doc. 12-1], and the State filed its brief, dated February 13, 2015 [Doc. 12-2]. On January 13, 2016, the Court of Appeals affirmed the PCR court's order denying the PCR application. [Supp. App. 62–64.] Petitioner filed another petition for rehearing on January 26, 2016. [Supp. App. 65–80.] The Court of Appeals denied the petition for rehearing on April 4, 2016. [Supp. App. 83.]

---

[2]The Supplemental Appendix can be found at Docket Entry Number 12-9.

Blanchette filed on Petitioner's behalf a petition for writ of certiorari in the Supreme Court of South Carolina, dated April 25, 2016. [Doc. 12-4.] The petition asserted the following as the sole issue presented:

> Whether the South Carolina Court of Appeals erred by failing to find that counsel['s] performance was ineffective and prejudicial thus rendering the guilty plea involuntary when counsel admittedly failed to conduct an independent investigation, failed to have a complete understanding of the evidence in order to properly advise Petitioner and refute evidence offered by the State, failed to ensure that Petitioner had the proper understanding of the terms of his plea, failed to move to withdraw or object when Petitioner's understanding of the terms of the plea agreement were breached and when there was a variation in facts from plea to sentencing, and failed to properly represent Petitioner in mitigation and reconsideration.

[*Id.* at 4.] The State filed a return. [Doc. 12-5.] On August 4, 2016, the Supreme Court of South Carolina denied certiorari. [Doc. 12-6.] Remittitur was issued on August 8, 2016. [Doc. 12-7.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on January 20, 2017. [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

> **GROUND ONE:** The Petitioner's right to the effective assistance of counsel was violated by defense counsel's failure to properly enforce the terms of the plea agreement with the State.
>
> *Supporting facts*: The Petitioner understood that the terms of the plea agreement were that the State would not oppose the Petitioner's request for the imposition of a mandatory minimum sentence of fifteen years' imprisonment. However, during the sentencing proceeding, the victims requested that the Petitioner receive a life sentence.

Defense counsel did not object to this request nor did defense counsel move to withdraw the plea. His failure to take corrective action was error.

**GROUND TWO:** The Petitioner's right to the effective assistance of counsel was violated by defense counsel's failure to properly respond to the State's assertion that the Petitioner entered the victim's home.

*Supporting facts*: The charges in this case arose out of a home invasion where the Petitioner drove Quincy McCoy and John Henry to the victim's home. The Petitioner remained in the vehicle while McCoy and Henry went inside. During the plea, the State informed the plea judge that the Petitioner "acted solely as the get-away driver." However, during the Petitioner's sentencing hearing, the State informed the plea judge that the Petitioner may have kicked in the back door and that there was forensic evidence to corroborate that assertion. In fact, there was no evidence supporting that statement aside from the testimony of McCoy at Henry's trial. Defense counsel failed to take corrective action following the State's misstatement of the evidence and significant variance regarding the Petitioner's involvement from the plea hearing to the sentencing hearing.

[Doc. 1 at 5–7.] As stated, on April 17, 2017, Respondent filed a motion for summary judgment. [Doc. 13.] On May 31, 2017, Petitioner's filed a response in opposition [Doc. 17], and on June 7, 2017, Respondent filed a reply [Doc. 19]. Accordingly, the motion is ripe for review.

## **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or

unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101–02 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)    (i) there is an absence of available State corrective process; or
> >
> >     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may

consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[3] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson*

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the Supreme Court of South Carolina through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

<em>Procedural Bypass</em>

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also*

13

*Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## **DISCUSSION**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses

15

independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

**Ground One**

In Ground One, Petitioner asserts plea counsel was ineffective for not enforcing the terms of the plea agreement. [Doc. 1 at 5.] More specifically, Petitioner contends that he understood that the State would not oppose his request for a mandatory minimum sentence of fifteen years' imprisonment, but the victims requested a life sentence at the sentencing hearing. [*Id.*] Petitioner argues plea counsel was ineffective for not objecting to the victims' request or moving to withdraw the plea. [*Id.*]

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland*—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[4] *Richter*, 562 U.S. at 101. "A

---

[4]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

In the specific context of a guilty plea, to satisfy the prejudice prong of *Strickland*, a prisoner must show that "there is a reasonable probability that, but for counsel's errors, [the prisoner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Supreme Court further explained,

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error

17

state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court addressed plea counsel's performance under the standards set forth in *Strickland* and *Hill v. Lockhart*, 474 U.S. 52 (1985). [App. 283–84.] With respect to Ground One, the PCR court found,

> As to the allegation that counsel was ineffective for failing to ensure that Applicant was fully advised regarding the

---

> "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. . . . As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466 U.S., at 695, 104 S.Ct., at 2068.

*Hill*, 474 U.S. at 59–60.

original plea offer to 15 years and to ensure that the rejection of such offer was knowingly and understandably made by Applicant, this Court finds this allegation is without merit. Counsel's assessment was that there was a good chance that Applicant would be found guilty if he did not plead guilty, and counsel believed the state was going to seek additional charges. The plea bargain was a straight-up plea to burglary first and conspiracy. The Applicant interpreted the agreement as being that the state would not take any position on sentencing, and Applicant feels that that is not what happened and that the victims were particularly damaging. Counsel testified that the best offer the state was willing to give was a plea to burglary first and conspiracy, and that the state would take no position on sentencing. Counsel testified that there was never a 15-year plea deal on the table. Upon reviewing the record, this Court finds that the state was merely agreeing that there were no recommendations or negotiated sentence, and that nothing was done to violate the Applicant's rights. The victims were free to say what their positions were. This Court finds that contrary to Applicant's claim, there had never been an offer for a negotiated sentence of 15 years. Even if there were, Applicant testified that he rejected it. This Court finds that Applicant failed to show counsel's performance was deficient and any resulting prejudice; therefore this allegation is denied and dismissed.

***

As to the allegation that counsel was ineffective for failing to properly advise Applicant regarding the State's position on sentencing and/or move to withdraw when the State's position differed from what was conveyed by counsel to Applicant, this Court finds that Applicant has failed to meet his burden of proof. The life sentence imposed by the judge was harsh and counsel feels the same. However, Applicant knew about the potential for life imprisonment on the charge of burglary in the first degree. It was the judge's decision to impose the sentence, and the harshness of the sentence was not due to errors or admissions of counsel, nor had it been established to having been due to any impropriety on behalf of the state. Counsel testified that the best offer the state was willing to give was a plea to burglary first and conspiracy, and that the state would take no position on sentencing and that he discussed this with Applicant. The Applicant interpreted the agreement as being that the state would not take any position

on sentencing. This Court finds that the state's position did not differ from what was conveyed by counsel to the Applicant, as stated previously the state was merely agreeing that there were no recommendations or negotiated sentence. This Court finds that counsel properly advised Applicant regarding the state's position on sentencing and that counsel cannot be held ineffective for failing to move to withdraw Applicant's guilty plea when the state's position did not differ from what was conveyed by counsel to the Applicant. Applicant has failed to show counsel's performance was deficient and any resulting prejudice; therefore, this allegation is denied and dismissed.

[App. 288–90.] The South Carolina Court of Appeals affirmed the PCR court's order.

[Supp. App. 62–64.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* and *Hill* standards, which are the applicable Supreme Court precedents. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's determination, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland* or *Hill*. Petitioner was asked during his guilty plea whether he understood that he "could get as much as life in prison? The sentence carries 15 years to life." [App. 3:25–4:1.] Petitioner affirmed that he understood. [App. 4:3–5.] At the PCR hearing, plea counsel testified that he did not recall getting a 15-year offer, that "[i]t was always 15 to life" and that the State agreed to take a plea from 15 to life and would take no position on sentencing. [App. 159:22–60:10.]

Accordingly, the record supports the PCR court's determination that Petitioner failed to demonstrate either prong of the *Strickland* standard. Thus, the Court concludes the PCR court's decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent, and, accordingly, Petitioner is not entitled to habeas corpus relief on this ground.[5]

**Ground Two**

In Ground Two, Petitioner asserts plea counsel was ineffective for not responding to the State's assertion that Petitioner entered the victim's home. [Doc. 1 at 7.] More specifically, Petitioner contends that at the plea hearing, the State informed the plea judge that Petitioner acted solely as the get-away driver during the crime; however, at the

_____

[5]Although Petitioner argues the victim's widow's request for a life sentence should be imputed to the State [Doc. 17 at 12], he has failed to direct the Court to any authority supporting this position. He relies on *Commonwealth v. Martinez*, 539 A.2d 399 (Pa. 1988), in which the court held that the prosecutor "clearly violated the plea agreement to make no recommendation as to sentencing when he told the sentencing court that 'they' were asking the court to impose a maximum sentence." *Id.* at 404. However, that ruling was based on the fact that the prosecutor delivered the recommendation to the court. *Id.* ("Whether the recommendation for a maximum sentence technically originated with the victim, the arresting officer, or the district attorney, it was made to the court by the district attorney. As such, it carried with it the same force and the same authority as if the recommendation had originated with the representative of the Commonwealth."). At Petitioner's sentencing hearing, in contrast, the solicitor stated, "He's looking at 15 years to life, whatever Your Honor gives him. I did tell him that I would let the court know about his cooperation with the state both prior to and during trial." [App. 11:15–18.] The victim's widow is the one who stated that her family would be able to walk out the door and get in their car knowing Petitioner would be put away for the rest of his life. [App. 14:21–24.] *See Smith v. Stegall*, 385 F.3d 993, 1000–01 (6th Cir. 2004) (holding that a writ of habeas corpus should not issue where a prosecutor's statement at a sentencing hearing that the victim's family wanted to see the defendant receive a life sentence did not constitute a breach of the plea agreement provision that the state would not recommend a life sentence); *Clement v. McCaughtry*, 12 F.3d 1100 (7th Cir. 1993) (unpublished table decision) (rejecting an argument that the victim's statement that the court should impose a life sentence violated the prosecutor's agreement not to recommend a sentence of any specific number of years).

sentencing hearing, the State informed the judge that Petitioner may have kicked in the back door and there was forensic evidence to corroborate that assertion [*Id.*] Petitioner contends there was no forensic evidence to support the assertion other than the testimony of a co-defendant and that plea counsel was ineffective for failing to take corrective action after the State misstated the evidence. [*Id.*]

The PCR court addressed plea counsel's performance under the standards set forth in *Strickland* and *Hill.* [App. 283–84.] With respect to Ground Two, the PCR court found,

> As to the allegation that counsel was ineffective for failing to object and/or move to withdraw when the state provided the plea court with a variance in the facts from the plea to sentencing, this Court finds Applicant has failed to meet his burden of proof. This Court finds Applicant's testimony about feeling threatened is not credible. Even if Applicant did feel threatened to drive by his co-defendants, Applicant did not communicate that to counsel. The only thing that counsel knew about was the Applicant's claim that he felt threatened that night because his co-defendants had guns. This Court notes that one factual issue that was discussed in detail at the PCR hearing relates to whether there was a breaking into the house. There was evidence about a door being kicked out from the inside. There was evidence that a co-defendant gave conflicting statements, one of which was that the Applicant kicked in the door. There were questions raised about shoe impressions. However, this Court finds that none of those issues are proven to have been prejudicial to the Applicant. Applicant maintained all along that he never went in the house and counsel knew of that position and brought it out to the court. This Court finds that challenges to counsel's performance in this regard at the sentencing proceeding do not establish deficient performance or prejudice. The Applicant feels that counsel did maintain the position at times, including the plea, that Applicant was only the get-away driver; but Applicant maintains this changed, certainly by the reconsideration hearing, so that counsel placed Applicant inside the house. This Court does not find the evidence to support that interpretation. Counsel advised the court that Applicant drove the car. This Court finds the evidence supports the conclusion that Applicant was an accomplice to

the burglary and guilty through the doctrine of accomplice liability. The presentation to the judge demonstrates that counsel was well aware of the Applicant's position that Applicant never entered the house. This Court finds that counsel's performance was not deficient and that Applicant cannot prove resulting prejudice; therefore this allegation is denied and dismissed.

As to the allegations that counsel was ineffective for failing to refute the State's position that Applicant entered the home during the robbery at issue and for failing to present viable mitigation on the Applicant's behalf, this Court finds that these allegations are without merit. Counsel knew the evidence against the Applicant. Applicant feels that counsel failed to correct various statements made by victims and the state, specifically including assertions that Applicant supplied the weapons and that there was a claim that Applicant entered the house. Viewed in totality, this Court finds that counsel acted appropriately in presenting mitigation to the judge. Counsel testified that he did not object when the state gave a different variation of the facts at the sentencing proceeding because typically counsel does not object during a plea or sentencing hearing, and that counsel refutes or responds to what the state presented and vice versa. Counsel also testified that there was no real evidence showing Applicant did not go into the house and that it was Applicant's word against McCoy's statement. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) *and* McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). This Court finds that counsel articulated valid strategic reasons as to why he performed in certain ways and did not raise challenges by objections when the state and the victims were making their presentations to the court, and that Applicant has not shown that counsel was deficient in that choice of tactics. The statements by a victim to the sentencing judge that Applicant should be put away for the rest of his life was merely a statement of the victim's opinion and the plea attorney acted properly. This Court further finds that the Applicant has failed to show that he suffered any prejudice from counsel's alleged deficient performance. This Court finds that Applicant has failed to meet his burden of proof; therefore these allegation are denied and dismissed.

[App. 290–92.] The South Carolina Court of Appeals affirmed the PCR court's order. [Supp. App. 62–64.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* and *Hill* standards, which are the applicable Supreme Court precedents. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's determination, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland* or *Hill*. At the sentencing hearing, plea counsel stated,

> Your Honor, as to him entering the house, he has always denied having anything to do with going in the house. He stayed in the car, other than going into a quick shop and getting some potato chips when this thing happened. The only person that says anything about him going in the house is Quincy McCoy.
>
> Your Honor's probably aware from the trial I was not there when Mr. McCoy testified, but I could tell from the numerous statements, inconsistent statements, that he gave that Mr. McCoy had a real problem with telling the truth. And I think that is one of the things that he has was not telling the truth about, and he is the only person. None of the victims, nothing else, indicates that Whelthy here went in the house. And so we were - - we denied that and we have denied that.

[App. 15:9–23.] At the PCR hearing, plea counsel testified that there was no real evidence that Petitioner definitely did not go in the house. [App. 147:19–24.] He further testified that

24

he generally does not object during a plea or a sentencing proceeding and that he attempted to refute the State's theory that Petitioner had gone in the house. [App. 160:22–61:2.] Accordingly, the record supports the PCR court's determination that Petitioner failed to demonstrate either prong of the *Strickland* standard. Thus, the Court concludes the PCR court's decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent, and, accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

October 4, 2017
Greenville, South Carolina